UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

DEANNA MORRIS                                    :

Plaintiff,                                       :        04 CV 8239 (PAC) (THK)

                                                 :        <u>MEMORANDUM & ORDER</u>

ALES GROUP USA, INC. and
ERIC DOMEL                                       :

Defendants.                                      :

------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Deanna Morris ("Morris"), an African-American woman, brings this

action for employment discrimination, sexual harassment and retaliation against Defendants Ales

Group USA ("Ales"), her former employer, and Eric Domel ("Domel"), her former supervisor

(collectively "Defendants") claiming violations of 42 U.S.C. § 1981, Title VII of the 1964 and

1991 Civil Rights Acts, 42 U.S.C. § 2000e, et seq. ("Title VII") and New York State Executive

Law § 296 ("NYHRL").  She alleges seven causes of action: (1) unlawful removal from payroll,

(2) unlawful failures to hire, (3) unlawful replacement as brand manager, (4) unlawful

termination, (5) fraud, (6) sexual harassment, and (7) retaliation.[1]  Defendants now move for

summary judgment on all claims.  The motion is granted.

------------------------

[1] Embedded in Claim VII (Retaliation) of the Amended Complaint is Morris's attempt to reallege the ADEA claims.
 As Morris is well aware, the ADEA claims have already been dismissed with prejudice by Judge Preska.  (<u>See</u> J.
Preska, Apr. 25, 2005 Letter Endorsement).

**FACTS**[2]

Morris, a licensed cosmetologist, began working for Ales in September 1998 as a Customer Service Manager with salary of $42,000.  Ales is a French company that designs, manufactures and sells skincare, haircare, and fragrance products.  Later, Morris became the Officer Manager, and her salary was increased to $50,000.   Nicole Arbour was Morris's direct supervisor until 1999, when Arbour transferred out and Eric Domel became Morris's supervisor. In 1999, Morris was in charge of marketing the Phytospecific ("Specific") line of hair products. In January 2001, Morris and Ales entered into a consulting agreement ("Agreement").  The parties' allegations concerning the Agreement and its significance vary substantially.

Defendants contend that Morris's position as Brand Manager of the Specific line was terminated in January 2001 due to the lack of success of the Specific brand.  Ales offered Morris another position in Training at a reduced salary of $40,000.  Morris then worked in Training, but on a part-time basis.  Shortly thereafter, in February 2001, the parties entered into the Agreement which engaged Morris, through her company, Deanna's Inc., as a consultant on an "as needed basis" for Ales.  On February 21, 2001, the parties signed another agreement providing for Morris's consulting services through March 11, 2001, in exchange for $14,500, and the option to retain Morris's services beyond that time through June 30, 2001, at a rate of $200 per day.   The Agreement released Ales from legal liability for employment-related claims, in consideration for Morris's continued salary through February 15, 2001, and medical benefits through April 30, 2001.  Subsequently, the parties agreed in writing to extend the consulting

---

[2] The facts herein are taken primarily from Defendants' Local Rule 56.1 Statement in Support of Motion for Summary Judgment, dated August 31, 2006, and the exhibits thereto.  Although Morris has failed to submit her own Rule 56.1 Statement in response as required by the Local Rules, the Court has only deemed Defendants' stated facts to be admitted to the extent that they are uncontroverted by evidence in admissible form submitted by Morris with her opposition papers and pleadings.  See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001); Wilson v.

services through June 30, 2001.  From February 2001 on, Morris was off the payroll at Ales and any work she did was on a consulting basis.

Morris, on the other hand, characterizes the post-February 2001 relationship quite differently.  She contends that Domel approached her in January 2001 with the intention of changing her employment status from payroll employee to consultant for financial reasons because, Domel told her, Ales could no longer afford to keep her on payroll.  She alleges that she was forced into this new working relationship, and that she signed the February 21, 2001 agreement and prepared and signed subsequent consulting contracts with Ales with the understanding that the change in title was a change in name only, and that she would continue to function as she had as a payroll employee with the same compensation and benefits; Defendants, however, did not follow through with these representations and she was never restored to the payroll.

In April 2003, Morris submitted an invoice to Domel on behalf of Deanna's Inc. for $10,000 in conjunction with a press mention she had secured with The Oprah Winfrey Show.  The parties agree that Domel's immediate reaction to the invoice was negative and that he "vehemently" disapproved of the invoice.  (Am. Compl. ¶ 22.)  Shortly thereafter, in July 2003, Domel notified Morris via email that the working relationship was terminated and that Ales would not pay the $10,000 invoice.

Morris alleges that from the time she was taken off payroll, in February 2001, to the time she was terminated, she expressed interest in numerous payroll (non-consulting) positions at Ales, but was rejected each time.  She maintains that Ales refused to hire her for these positions and that Defendants terminated the Agreement because of discriminatory motives

New York City Hous. Auth., 2007 WL 1032262 (S.D.N.Y. Apr. 02, 2007).

and, alternatively, based on her refusal to acquiesce to the sexual harassment by Domel during her tenure at Ales.

Defendants maintain, however, that Morris was initially demoted because her position was eliminated based on the lack of financial success of the Specific brand, and that Ales terminated the Agreement with Morris in 2003 based on their disagreements concerning the $10,000 invoice. Defendants deny that discrimination played any role in the employment decisions concerning Morris and deny all sexual harassment allegations.

### PROCEDURAL HISTORY

On May 25, 2004, Morris filed a charge against Ales with the United States Equal Employment Opportunity Commission ("EEOC") for discrimination based on race, color, sex, national origin, age, retaliation, and "other" which she identified on the form as her being "too fat." The EEOC issued a dismissal and right-to-sue letter on May 28, 2004 (postmarked June 1, 2004). Morris then filed this action against Ales on October 19, 2004. On April 25, 2005, Judge Preska[3] dismissed the ADEA claim with prejudice. On June 30, 2005, Morris filed an amended complaint ("Amended Complaint") adding Domel as a defendant.

Magistrate Judge Katz presided over the pretrial discovery matters, which proved to be contentious. Morris refused to comply with discovery orders, and disregarded warnings of sanctions. As a result, Magistrate Judge Katz imposed sanctions: (1) the November 16, 2005 order precludes Morris from seeking emotional distress damages; and (2) the December 14, 2005 order precludes Morris from seeking economic damages. Morris objected to the rulings and sanctions and appealed to this Court. The Court sustained Magistrate Judge Katz's rulings on

---

[3] This case was first assigned to the Hon. Loretta Preska with a reference to Magistrate Judge Theodore Katz, and reassigned to this Court on August 4, 2005, with the reference to Magistrate Katz remaining in effect.

March 24, 2006, and again on March 30, 2007.

Defendants filed their motion for summary judgment on October 18, 2006. Morris's response focuses on the same discovery disputes that have characterized this case for the past three years, rather than on factual bases for her claims. The thrust of her opposition is that the motion for summary judgment is premature because her attempts at discovery have been frustrated in light of Magistrate Judge Katz's orders and rulings.[4] In light of the Court's prior rulings, Morris's position is not well taken.

## STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should only be granted if "the nonmoving party 'has failed to make a sufficient showing on an essential element of [her] case with respect to which [she] has the burden of proof.'" Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted). Summary judgment should not be granted where issues of fact are "genuine," and "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment is rarely appropriate in employment discrimination cases, where the employer's intent and state of mind are in dispute. Carlton v. Mystic Transp., Inc., 202

---

[4] Morris's only factual submission of any relevance to this motion was submitted on June 26, 2006, and attached as Exhibit B to Morris's Response to Defendant's Motion for Summary Judgment. The Court has considered the

F.3d 129, 134 (2d Cir. 2000).  While summary judgment is available to defendants in discrimination cases, its use is limited to situations in which there is a complete lack of evidence in support of the plaintiff's position, or the evidence is so overwhelmingly slanted in favor of the defendant "that any contrary finding would constitute clear error."  Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998).  Still, a plaintiff "is not entitled to a trial simply because the determinative issue focuses on the defendant's state of mind."  Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988).  As this Circuit has cautioned:

> The summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation.

Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

The Court must grant summary judgment for defendant where plaintiff's evidence is "merely colorable, conclusory, speculative, or not significantly probative."  White v. Lenox Hill Hosp., No. 02-CIV-5749, 2004 WL 2337016, at * 1 (S.D.N.Y. Oct. 18, 2004) (citing Anderson, 477 U.S. at 249-50).  A plaintiff cannot create a disputed issue of fact by offering "conclusory allegations, conjecture, and speculation."  Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotation marks omitted). Instead, to survive summary judgment, plaintiff's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions."  Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981) (internal citations and quotation marks omitted).

---

factual assertions made in the letter, and cites to it, as appropriate.

The same standards apply when a litigant is <u>pro se</u>; however, such a litigant is afforded wide latitude and her submissions are held "to less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). Thus, the Court must "read the pleadings of a <u>pro se</u> plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'." <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).

## I. Mootness

As a threshold jurisdictional matter, the Court must decide whether Morris's failure to follow Magistrate Judge Katz's orders and the resulting sanctions precluding her from recovering emotional distress and economic damages have rendered her claims moot. There must be a real "case or controversy" at every step of a federal judicial proceeding. <u>See Agee v. Paramount Commc'ns. Inc.</u>, 114 F.3d 395, 398 (2d Cir. 1997). To sustain jurisdiction, "it is not enough that a dispute was very much alive when suit was filed . . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit." <u>Lewis v. Cont. Bank Corp.</u>, 494 U.S. 472, 477-78, (1990) (quoting <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 1010 (1983)). A case becomes moot if "it is impossible for the court to grant <u>any</u> effectual relief whatever to a prevailing party." <u>In re Kurtzman</u>, 194 F.3d 54, 58 (2d Cir. 1999) (internal quotations omitted).

As a result of Morris's repeated discovery violations, Magistrate Judge Katz precluded Morris from seeking emotional distress damages (Nov. 16, 2005 Order) and economic damages (Dec. 13, 2005 Order). On Morris's appeal from those determinations, the Court sustained them on the record after a hearing on March 24, 2006. After further rulings by the Magistrate Judge, Morris took another appeal; the Court ratified its prior determinations of March 24, 2006, and affirmed the Magistrate Judge's subsequent rulings (Mar. 30, 2007 Order).

Morris is proceeding pro se, and therefore is not entitled to attorneys' fees.  See Kay v. Ehrler, 499 U.S. 432 (1991).  Thus, Morris is foreclosed from any monetary relief in this case.  Furthermore, Morris does not seek equitable relief of any kind, including reinstatement.  Similarly, it is well settled that "[e]motional involvement in a lawsuit is not enough to meet the case-or-controversy requirement."  Aschroft v. Mattis, 431 U.S. 171, 172-73 (1977).  In these circumstances, it is impossible for the Court to grant Morris any relief and consequently, there is no case or controversy.  Accordingly, the Court lacks subject-matter jurisdiction.

Out of an excess of caution, however, the Court proceeds to address numerous other grounds on which this case must be dismissed.

## II. Status as Employee vs. Independent Contractor

Independent contractors are not protected by Title VII and NYHRL  See O'Connor v. Davis, 126 F.3d 112, 115 (2d Cir. 1997) (Title VII); Scott v. Mass. Mut. Life Ins. Co., 86 N.Y.2d 429 (1995) (NYHRL).[5]  Courts look to a number of common law factors in determining employment status, including:

> the skill required; the source of the instrumentalities and tools; the location of the work; … the extent of the hired party's discretion over when and how long to work; the method of payment; … the provision of employee benefits; and the tax treatment of the hired party.

Comm. for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989) (citations omitted).  Notwithstanding Morris's current arguments, it is clear that she recognized that her status shifted from that of an employee to an independent contractor as of February 2001.

First of all, the Agreement Morris signed in February 2001 explicitly changes her

---

[5] Section 1981 does, however, apply to situations other than employment, as it provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Consequently, Morris was covered by section 1981 even if she was not an employee.

status from employee to a "consultant" or, in other words, an independent contractor.  (Ex. B

104-05; Ex. K.)  After executing the February 2001 agreement, Morris filed for and received

unemployment benefits (Ex. B 127-28.), indicating her recognition that she was no longer an

employee.  Beginning in February 2001, Morris conducted all business with Ales not in the

capacity of an individual employee, but via her company, Deanna's Inc. (Ex. H; Ex. B 14-50.)

In fact, her letterhead stated that she provided "Designing and Consulting Services." (Ex. H.)

After February 2001, the billing and payment between Morris and Ales also changed: all

invoices from and payments to Morris were to Deanna's Inc., not Morris. (Ex. H; B. 287-89; C

163-64.)  Finally, the I.R.S. determined that Morris was an independent contractor for the years

of 2002 and 2003.  (Ex. G.)

       In addition to these indicia of a change in status from employee to independent

contractor, Morris no longer worked standard 9-5 p.m. days at Ales, nor was she under Ales's

day-to-day supervision or control.  (Ex. B 155-57.)  She stopped working at or reporting to the

Ales office on a daily basis, and Ales no longer provided her with a computer, corporate credit

card, or Ales email account.  (Id.)  The nature of her work changed as well.  After February

2001, she performed trainings, rather than performing the higher-skilled job as Brand Manager.

Further, after February 2001, she no longer received employee benefits (except the healthcare

benefits that the parties contracted for in the Agreement), or an annual salary.

       Morris does not dispute the existence of the Agreement; rather she claims she

signed it only to appease Ales and Domel but that neither she nor Defendants ever had the

intention to change her employment status.  Beyond Morris's allegations, however, there is no

evidence to corroborate this story.  On these facts, no reasonable jury could find that Morris was

---

See Anyan v. New York Life Ins. Co., 192 F. Supp. 2d 228, 238 (S.D.N.Y. 2002).

an employee after February 2001.  As a matter of law, she was an independent contractor.  As

such, Morris cannot seek protection under Title VII or NYHRL.  Claims Two, Three, Four, Six,

and Seven must be dismissed.

### III. Fraud Claim

Morris's Fifth claim, fraud, also fails.  She alleges that after signing the February

2001 Agreement, Defendants promised to reinstate her as an employee at some later date; she

worked as a consultant with the company in reliance of this promise, but they refused to rehire

her; and they never had any intention of rehiring her.

As a matter of law, New York courts do not recognize promises or offers of future

at-will employment as grounds for a fraud claim.  See Aris v. Women in Need, Inc., 274 A.D.2d

353 (1st Dept. 2000).  Up until February 2001, Morris was an at-will employee (Ex. B, 63-64);

she had no employment contract.  After February 2001, Morris had a written consulting

agreement which was silent on any employment at Ales.  Oral promises of future at-will

employment cannot serve as the basis for a fraud claim.[6]  See Albert v. Loksen, 239 F.3d 256,

264 (2d Cir. 2001) (holding that "absent an agreement establishing a fixed duration, an

employment relationship is presumed to be a hiring at will" under New York law) (citation and

quotation omitted); Aris, 274 A.D.2d 353 (holding that plaintiff could not establish reasonable

reliance element of fraud claim since the offered employment was at-will).  Consequently, Claim

Five is dismissed.

### IV. Discrimination Claims

Section 1981 protects against discrimination on the basis of race or color.

---

[6] Furthermore, the fraud claim does not satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9 that calls for pleading fraud with specificity.

Choudhury v. Polytechnic Inst. of N.Y., 735 F.2d 38, 42 (2d Cir. 1984).  The statute guarantees

to all persons an equal right "to make and enforce contracts," 42 U.S.C. § 1981(a), which was

amended to include "the making, performance, modification, and termination of contracts, and

the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

42 U.S.C. § 1981(b).  Therefore, a plaintiff alleging employment discrimination on the basis of

race may bring a claim under Section 1981 in addition to, or instead of, a claim for

discrimination under Title VII.  "The same elements constitute a claim for employment

discrimination under Section 1981 as under Title VII."  Choudhury, 735 F.2d at 44.

       The Court reviews Defendants' motion for summary judgment under the three-

part burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

First, plaintiff must establish a prima facie case that she suffered from a discriminatory

employment action on the basis of her race, "by either direct, statistical or circumstantial

evidence."  Bickerstaff v. Vassar Coll., 196 F.3d 435, 445 (2d Cir. 1999); see also McDonnell

Douglas, 411 U.S. at 802.  This burden is minimal.  Carlton v. Mystic Transp., Inc., 202 F.3d

129, 134 (2d Cir. 2000).  The burden then shifts to defendant to provide a legitimate,

nondiscriminatory reason for its actions.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507

(1993); McDonnell Douglas, 411 U.S. at 802; Dawson v. Bumble & Bumble, 398 F.3d 211, 216

(2d Cir. 2005).  If an employer articulates a nondiscriminatory reason for its conduct, the

inference of discrimination raised by plaintiff's prima facie case "simply drops out of the

picture," St. Mary's Honor Ctr., 509 U.S. at 511, and the burden shifts back to plaintiff to prove

that the employer's nondiscriminatory explanation is pretextual.  See id. at 507-08.

       Morris alleges four separate claims of employment discrimination based on

different theories, which the Court will take up individually: (1) elimination of Morris's position in February 2001, (2) refusal to rehire Morris for positions on payroll after February 2001, (3) hiring of Norma Lujan for Morris's former permanent position, and (4) termination of Morris's consulting contract in 2003.

### Claim One – Elimination of Morris's Position in February 2001

To establish a claim of disparate treatment in the employment context, Morris must show: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination based on membership in the protected class.  See Dawson, 398 F.3d at 216; Rosen v. Thornburgh, 928 F.2d 528, 532 (2d Cir. 1991) (citing McDonnell Douglas, 411 U.S. at 802).

Rather than apply the McDonnell Douglas test formalistically, the Court will assume that Morris has made out a prima facie case of discrimination on this claim.  See, e.g., Peterson v. City Coll., 32 F. Supp. 2d 675, 685 (S.D.N.Y. 1999); Evans v. Golub Corp., 29 F. Supp. 2d 194, 2001 (S.D.N.Y. 1998); see also Lapsley v. Columbia Univ., 999 F. Supp. 506, 515 (S.D.N.Y. 1998) (listing cases in which the court assumed, without detailed analysis, that the plaintiff established a prima facie case of discrimination).  The Court will proceed directly to the last two steps in the McDonnell Douglas inquiry: whether Defendants have provided a legitimate, nondiscriminatory explanation for eliminating Morris's position, and, if so, whether Morris has rebutted this explanation with evidence of pretext.

Morris alleges that the elimination of her position of Brand Manager in February 2001 and subsequent removal from payroll were based on her race, color and national origin. Morris alleges that she was "the only person at the Company who was so treated," and "the only

12

black person treated this way." (Am. Compl. ¶¶ 28-29.) In support, Morris recounts statements

Domel made to her in Fall 2000, including that she was "too fat" and "too black" for the position

of Brand Manager, and that in Spring 1999, Domel turned down a black applicant for the

receptionist position because he said (to Morris) that he wanted "young, blue-eyed, pretty

blonds" to work for the Company." (Id.) Morris also alleges that Domel treated French

employees more favorably than "non-French employees" and that "[i]f my removal from the

payroll was based on the fact that I am an American rather than French . . . then this removal and

its consequences would constitute unlawful discrimination on the basis of national origin . . . . I

believe this was the case." (Id. ¶¶ 31-32.)

Defendants, however, firmly establish a legitimate, nondiscriminatory reason for

eliminating Morris's position and converting her status from employee to consultant: financial

shortcomings of the Specific Brand. Defendants' evidence establishes that they continuously

communicated their concerns about the struggling sales of the fledgling brand to Morris. For

example, in an October 27, 2000 email from Domel to Morris, Domel denies Morris's request

for a 40% salary increase because "we [Ales] are [losing] a lot of money" and "today

phytospecific does not have great results." (Parker Decl. Ex. I.) In a January 19, 2001 memo

from Domel to Morris, Domel reiterates the lack of success of the Specific brand, citing that as

the reason for the elimination of Morris's position: "[Sales] have not been as high as we

expected and the costs are extremely higher than we anticipated. Therefore we decided that the

marketing will no longer be handled by Ales Group USA and we need to eliminate the

Marketing and Sales position." (Parker Decl. Ex. J.) Domel, however, then offers Morris

another position in Training for $40,000 per year. (Id.) This evidence is more than sufficient

under the McDonnell Douglas standard to establish a legitimate, nondiscriminatory reason for

Defendants' conduct.

Morris argues that Defendants' legitimate, nondiscriminatory reason is pretexual, and that the real reason for their conduct is discrimination. She asserts that the Specific brand was not in fact suffering but growing, due primarily to her own efforts. She offers no support for these conclusions.

In order to survive a motion for summary judgment, however, a plaintiff must offer concrete, admissible evidence from which a reasonable jury could find purposeful discrimination by the defendant. At the pretext stage, "the factual inquiry proceeds to a new level of specificity." St. Mary's Honor Ctr., 509 U.S. 502, 518 (1993) (quoting Tex. Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 255 (1981)). "[T]he inquiry now turns from the few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced." Id. Plaintiff must provide enough evidence of pretext that a rational fact finder could conclude that the employer's "presumptively valid reasons" for its conduct "were in fact a coverup for a racially discriminatory decision." McDonnell Douglas, 411 U.S. at 805. A plaintiff attempting to establish pretext "may not prevail by establishing only [falsity], but must prove, in addition, that a motivating reason was discrimination." Bickerstaff, 196 F.3d at 447 (internal quotation marks and citations omitted). "The plaintiff retains the burden of persuasion." St. Mary's Honor Ctr., 509 U.S. at 518 (quoting Burdine, 450 U.S. at 256). "[T]he evidence as a whole must be sufficient to sustain an 'ultimate finding' of intentional discrimination." Peterson, 32 F. Supp. 2d at 684 (citation omitted).

Morris fails to meet the burden imposed on her by McDonnell Douglas. Although she makes conclusory allegations of pretext, those allegations are not supported by a single piece of evidence other than Morris's own opinions and conjectures. Even when drawing

all reasonable inferences in the light most favorable to Morris, the record as a whole does not establish a genuine issue of fact as to pretext.  No reasonable jury could infer from Morris's evidence (or lack thereof) that Defendants eliminated the Brand Manager position based on a discriminatory motive.

### Claim Two – Failures to Rehire/Promote

Morris alleges that from the time she was removed from payroll in February 2001 (and continued on as a consultant), she "repeatedly asked [Domel] to return [her] to a position that would allow [her] to again be on the payroll." (Am. Compl. ¶ 34.)  Whenever she learned of an opening of interest, she "expressed [her] interest in and/or qualifications for the position directly to Eric or to whomever else might be able to help [her] obtain the position." (Id.)  She alleges there were "at least 6 positions" that she was qualified for but did not receive because "less qualified white people were hired for them instead." (Id. ¶ 35.)  Specifically, in 2001, she approached Marie Christine Steffanetti at Ales who was seeking to hire a training assistant, and she told Morris that "Eric wanted someone different" for the position. (Id. ¶ 37.)  Morris states that she "took that to mean not a black person" in light of Domel's previous statements that Morris was "too fat" and "too black" as well as his refusal to hire the black applicant for the receptionist position because he wanted "young, blue-eyed, pretty blondes." (Id. ¶¶ 36-37.)

With respect to a discriminatory failure to hire or promote claim, the McDonnell Douglas test again applies.  In order to establish a prima facie case, the plaintiff must show "that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of discrimination." Burdine, 450 U.S. at 254.  An inference of discrimination may arise if the position remains open and the employer continues to seek applicants of the plaintiff's qualifications, McDonnell Douglas, 411 U.S. at 802, or if the

position was filled by someone not a member of plaintiff's protected class. de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs., 82 F.3d 16, 20 (2d Cir. 1996).

Despite the minimal threshold showing required to make a prima facie case of discrimination, Morris nonetheless fails on these claims.  First, Morris has not demonstrated that she "applied" for any of these open positions.  Morris's allegation that there were positions that she "expressed her interest and/or qualifications for" does not suffice, nor does her assertion that she had "expressed an interest in anything that [her] resume listed."  (Morris Dep. 195.)  See, e.g., Colucci v. New York Times Co., 533 F. Supp. 1005, 1007 (S.D.N.Y. 1982) (holding that plaintiff failed to make out a prima facie failure to hire claim based on an "informal oral request" that was "no substitute for applying").  Indeed the Second Circuit explicitly forecloses this argument:

> [Plaintiff's] argument is foreclosed by our decision in Brown v. Coach Stores, Inc., 163 F.3d at 710, which emphasizes that the second element of a prima facie case cannot be established merely with evidence that a plaintiff generally requested promotion consideration. A specific application is required to "ensure[ ] that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer." Id. Further, the requirement ensures that the fact finder is not left to speculate as to the qualifications of the competing candidates, the damages to be derived from the salary of unknown jobs, the availability of alternative positions, the plaintiff's willingness to serve in them (e.g., in other locales or on other shifts), etc. The requirement also protects employers from the unfair burden of having "to keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply." Id.

Petrosino v. Bell Atlantic, 385 F.3d 210, 227 (2d Cir. 2004).  Furthermore, with the exception of the Educator position, there are no allegations of who filled these positions (e.g., in or not in a protected class) or whether Ales continued to seek applicants with Morris's qualifications.  In sum, Morris has not alleged a prima facie claim for failure to hire because she has presented no

evidence that she actually applied for these positions, or that these positions were filled by people not in her protected class (except Educator), or that Ales continued to seek applicants with her qualifications.

In light of this record, Morris failed to satisfy her de minimis burden to show circumstances from which an inference of discrimination could be drawn, and she is not entitled to a trial based on her speculative assertions on matters as to which she has no knowledge and no evidence.  See Goenaga v. March of Dimes, 51 F.3d 14 (2d Cir. 1995).  Accordingly, these claims are dismissed.

### Claim Three – Hiring of Norma Lujan for Brand Manager

Claim Three is an extension of Claim Two: Morris alleges that Defendants discriminated against her by failing to rehire her for the Brand Manager position and instead hiring Norma Lujan, who is not African-American, and who was less qualified than herself. Here, the Court will assume that Morris has made out a prima facie case.  See Peterson, 32 F. Supp. 2d at 685.

Defendants, however, firmly establish a legitimate, nondiscriminatory reason for choosing Ms. Lujan for the position over Morris.  Domel testified at his deposition that he hired Ms. Lujan, who is also a member of a protected class, Hispanic-American, because he believed that she had the qualifications and education, including a Master's Degree, "to build a winning strategy for Phytospecific."  (Domel Dep. 165.)

Morris argues that Defendants' legitimate, nondiscriminatory reason for eliminating her position is pretexutal, and that the real reason for hiring Ms. Lujan rather than herself is discriminatory.  She asserts that Defendants hired Ms. Lujan because she "appears to be Caucasian, with straight fine hair, no hips and heavy breast."  (Am. Compl. ¶ 44.)  She also

claims that Ms. Lujan "is actually a native of a Latin American country or of Spain" and that "[i]f either of these two possibilities is true and played a favorable role in the Company's decision to prefer her over [Morris] for the Specific brand manager position, then her hiring is an instance of discrimination on the prohibited basis of national origin."  (Am. Comp. ¶ 45.)

It is clear that Morris again fails to meet the burden imposed on her by McDonnell Douglas.  Although Morris makes conclusory allegations of pretext, those allegations are not supported by a single piece of evidence other than Morris's own opinions, conjecture and speculation.  A plaintiff's subjective view of her performance does not create a genuine issue of material fact.  See Holt v. KMI-Cont'l, Inc., 95 F.3d 123, 130 (2d Cir. 1996). Further, even if Morris had presented evidence to corroborate her superior qualifications, and Ms. Lujan's inferior qualifications, which she has not, evidence of a poor hiring decision, alone, does not create a genuine issue of fact.  See Dister, 859 F.2d at 1116.

Even when drawing all reasonable inferences in the light most favorable to Morris, the record as a whole does not establish a genuine issue of fact as to pretext.  No reasonable jury could infer on this record that Defendants hired Ms. Lujan and not Morris based on a discriminatory motive.

### *Claim Four – Termination of Consulting Agreement in 2003*

Claim Four asserts that Defendants discriminated against Morris when they terminated her consulting contract in 2003 "despite [her] satisfactory performance of [her] job duties [which] suggests that the reason for [her] dismissal involves a consideration of factors other than [her] job-related conduct."  (Am. Compl. ¶ 48.)  Like Claim Two, Morris again fails to make out a prima facie case.  In her deposition, she admits that the person who took over her position was a "very dark-skinned, black male, African-Caribbean descent."  (Morris Dep. 236.)

18

Consequently, this discrimination claim fails because it is undisputed that a black employee replaced her.  See Brown v. City of New York, No. 94-CIV-7090, 1998 WL 67657 (S.D.N.Y. Feb. 18, 1998).

Moreover, even if plaintiff had made out a prima facie case of discrimination, the Defendants have satisfied their burden of rebutting the prima facie case by producing undisputed evidence that the consulting contract was terminated for legitimate nondiscriminatory reasons: Morris had submitted an invoice for $10,000 (per her consultant status) for a press mention associated with The Oprah Winfrey Show that Ales alleges they never asked for.  Morris admitted on deposition that Domel refused to pay Morris this amount because he found it to be "inappropriate" and stated that Morris costs Ales "too much."  (Morris Dep. 212-15.)  On July 11, 2003, Domel sent an email to Morris ending the consulting relationship and again refusing to pay Morris the $10,000 invoice.  (Parker Decl. Ex. O.)

Other than Morris's conclusory and unsupported statement that Defendants' proffered reason of a disagreement over the invoice was a "sham" (Morris Opp. to Summ. J. Mot. Ex. B, 6), Morris fails to put forth any evidence whatsoever that it was in fact pretextual. On the facts of this case, the Court cannot find any evidence from which a reasonable jury could find that Defendants' presumptively valid reasons for terminating the consulting relationship were pretextual, masking discrimination.

### V. Discrimination Claims Under N.Y. Executive Law § 296 (NYHRL)

A claim of discrimination pursuant to New York Executive Law § 296 is subject to the same analysis as a claim of discrimination under federal law.  See Melnyk v. Adria Labs., 799 F. Supp. 301, 312 (W.D.N.Y. 1992).  Thus, for the same reasons that Morris fails to establish disparate treatment or discriminatory retaliation under 42 U.S.C. § 1981, Morris fails to

establish a claim of discrimination under New York Executive Law § 296.

## VI. Sexual Harassment Claim

Title VII forbids actions taken on the basis of sex that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment." 42 U .S.C. § 2000e-2(a)(1).  As with a hostile work environment claim, the Supreme Court has found sexual harassment actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  "[W]hether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Faragher v. Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993)).  "A recurring point in these opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Faragher, 524 U.S. at 788 (internal quotation marks omitted).

Morris's sexual harassment allegations against Domel are not, as a matter of law, "severe or pervasive."  Morris alleges that Domel "manifested an interest" in her of a "quasi-sexual or romantic nature in several ways throughout the course of [the] relationship."  (Am. Compl. ¸ ¶ 60)  Morris alleges that he told her that he enjoyed watching women dance topless and asked her if she wanted to go with him to a topless club.  (Id.)  Morris also alleges that Domel was "constantly touching [her], e.g. grabbing [her] by the hand to lead me into his office

20

for a meeting, hugging [her], and wanting to cheek-kiss when [they] met or parted . . . .  He did

not insist on such regular physical expressions of affection with [Morris's] co-workers."  (Id.)

Morris alleges that she conveyed to Domel that she was not interested in a personal relationship

with him, including by "gesturing toward" herself and "playfully" telling Domel that "he

couldn't handle this."  (Id. ¶ 62.)  Morris further asserts that Domel's expressions of interest in

her were "subtle" but she never felt it appropriate to "seriously" tell him that she was not

interested in a relationship, and "the possibility that he was interested in such a relationship with

[her] was nonetheless offensive and unwelcome."  (Id. ¶ 64.)

 The events that Morris recounts amount to no more than the isolated, less-

significant incidents described in Faragher.  These allegations are either too speculative or too

indirect to constitute sexual harassment and are no more than "simple teasing, offhand

comments, and isolated incidents."  See Faragher, 524 U.S. at 788.  Consequently, Morris's

allegations cannot support a claim for sexual harassment, and Defendants' motions for summary

judgment are granted on this issue.

## VII. Retaliation

 Title VII protects an employee engaging in a protected activity from any

retaliation by an employer.  Cruz, 202 F.3d at 566. To establish a prima facie Title VII retaliation

case, Morris must show that: (1) she was subjected to an adverse employment action; and (2) the

adverse employment action was causally related to a protected activity in which she was

engaged.  See Burdine, 450 U.S. at 253.

 Morris alleges that she was retaliated against for protesting "unfair treatment" of

herself and her co-workers (Am. Compl. ¶75.)  The "unfair treatment" includes a gay employee's

reprimand for viewing pornography on his work computer, discriminating against "older people

21

by looking for ways to terminate them," discriminating against "Americans by giving French or

non-American people better 'perks,'" discriminating against "female employees by fostering a

locker-room, chauvinistic, old-boy-network office culture that somewhat objectified women

employees as sexual objects," and allowing executives to smoke cigarettes in the office.  (Id. ¶

79.)

    Notwithstanding that most of the retaliation allegations fail to state a claim

because the activities are not protected (smoking at work, viewing pornography at work) and

because the adverse employment action is not alleged to be causally or even temporally related

to any protected activity, see Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir.

1996), the claims nonetheless fail as a matter of law because Defendants have alleged legitimate,

non-discriminatory reasons for each alleged adverse action against Morris and Morris has failed

to offer any evidence in rebuttal, as discussed in detail, infra.

### VIII. STATUTE OF LIMITATIONS

    While the Court has not stated all the reasons why Morris's complaint is

inadequate, and why summary judgment is appropriate, the Court's reasoning would not be

complete without a review of the timeliness—or lack thereof—of many of Morris's claims.

    Title VII claims are time-barred if plaintiff does not file a charge with the EEOC

within 300 days after receiving notice of the alleged unlawful employment practice.  See Nat'l

R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002); Delaware State Coll. v. Ricks, 449

U.S. 250 (1980).  Morris filed the EEOC charge on May 25, 2004, therefore all conduct that

either occurred (or was put on notice that the conduct was going to occur) before July 30, 2003,

is time-barred.  It is undisputed that the alleged discriminatory conduct in Claim One

(termination from Brand Manager position in February 2001) occurred prior to July 30, 2003,

and therefore is time-barred.  Similarly, Morris has made no specific allegations that any of the discriminatory conduct alleged in Claim Two occurred after July 30, 2003.  Consequently, that claim is also dismissed.

Furthermore, Claim One, to the extent it is based on the NYHRL, is barred because Morris' termination in February 2001 occurred more than 3 years before the filing of the complaint.  See N.Y. CPLR § 214(2).

Moreover, all Title VII, § 1981, and NYHRL claims against Domel are time-barred because, despite knowing his identity, Morris did not amend the complaint to include Domel until June 30, 2005, which is beyond the statute of limitations period for all the discrimination and sexual harassment claims.  See Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999) (dismissal of john-doe defendants)[7]; N.Y. CPLR § 214(2) (NYHRL claims barred after 3 years from filing of complaint); Morgan, 536 U.S. at 122 (Title VII claims barred after 300 days from filing of EEOC charge); Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004) (§ 1981 claims barred after 4 years from filing of the complaint).

## CONCLUSION

Defendants are entitled to summary judgment on all of Plaintiff's discrimination, retaliation, sexual harassment and fraud claims as a matter of law, as well as on the grounds of mootness.  Accordingly, the Defendants' motion for summary judgment is GRANTED and Plaintiff's claims are DISMISSED with prejudice.  The Clerk of the Court is ORDERED to close out this case.

Dated:  New York, New York
        June 28, 2007

---

[7] The same holds true for pro se litigants.  See Tapia-Ortiz, 171 F.3d at 152.

Domel until June 30, 2005, which is beyond the statute of limitations period for all the

discrimination and sexual harassment claims. See Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d

Cir. 1999) (dismissal of john-doe defendants)[7]; N.Y. CPLR § 214(2) (NYHRL claims barred

after 3 years from filing of complaint); Morgan, 536 U.S. at 122 (Title VII claims barred after

300 days from filing of EEOC charge); Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369

(2004) (§ 1981 claims barred after 4 years from filing of the complaint).

## CONCLUSION

Defendants are entitled to summary judgment on all of Plaintiff's discrimination,

retaliation, sexual harassment and fraud claims as a matter of law, as well as on the grounds of

mootness. Accordingly, the Defendants' motion for summary judgment is GRANTED and

Plaintiff's claims are DISMISSED with prejudice. The Clerk of the Court is ORDERED to close

out this case.

Dated: New York, New York
June 28, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

---

[7] The same holds true for pro se litigants. See Tapia-Ortiz, 171 F.3d at 152.

24

Copies Mailed To:

Deanna Morris
432 East 14th Street
P.O.Box 616
New York, NY 10009-3486

Glen Howard Parker
Hoey, King, Toker & Epstein
55 Water Street 28th Floor
New York,, NY 10041